## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLORADO

AMERICA 2030 CAPITAL LIMITED,

    Plaintiff,

    v.

JOHN DOE & AUTOMATTIC INC.,

    Defendant.

C.A. No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DEFAMATION AND COPYRIGHT INFRINGEMENT

    Plaintiff, AMERICA 2030 ("Plaintiff") hereby files this Complaint against JOHN DOE as fictitious name for the unknown author of the content on the content provider's website (wordpress.com) owned by the Company AUTOMATTIC, INC. ("Defendant Automattic") for Defamation, Defamation Per Se and Defamation by Implication. This is also an action for copyright infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 et seq. This suit is brought against the author of the action. However, since the content provider Automatic does not provide for the content provider's identity, the action is brought against the anonymous person under the fictitious name JOHN DOE. Since Automatic is the publisher of such content, this action is served against Automatic for publishing such defamatory content on their platform.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 under diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds $75,000.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

3. The claims asserted herein arise under and pursuant to 15 U.S.C. §1125; the Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

4. This action arises out of violations of the United States Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. §§ 1051 ff, and the United States Copyright Act of 1976, Title 17 U.S.C. chapters 1 through 8 and 10 through 12. Thus, this Court also has subject matter jurisdiction under 28 U.S.C. §1331.

## THE PARTIES

5. Plaintiff AMERICA 2030 is an individual and a citizen and resident of the state of Florida and lives and does substantial business in this district.

6. Defendant Automattic is s a corporation incorporated in the state of Delaware. Automattic does substantial business in all 50 states, including Florida and in this district. This suit is brought against the author of the action. However, since the content provider Automattic does not provide for the content provider's identity, the action is brought against the anonymous person under the fictitious name JOHN DOE. Since Automattic is the publisher of such content, this action is served against Automattic for publishing such defamatory content on their platform.

## STANDING

7. Plaintiff has standing to bring this action because he has been directly affected, victimized and severely damaged by the unlawful conduct complained herein. The Company injuries are proximately related to the conduct of Defendant Automattic. This suit is brought against the author of the action. However, since the content provider Automattic does not provide for the content provider's identity, the action is brought against the anonymous person under the fictitious name JOHN DOE. Since Automattic is the publisher of such content, this action is served against Automattic for publishing such defamatory content on their platform.

## FACTS

8. Plaintiff operates a well-known business around the world.

9. Plaintiff engages in the business of stock loans.

10. Plaintiff has long maintained a page on Defendant Automattic's platform, where he engaged with fans and promoted his work.

11. The Automattic page "@valsklarov" appeared on Automattic platform providing in relevant part "AMERICA 2030 and his company are only concerned with manipulating people and stealing their hard-earned money." The exact page is provided in Exhibit A of this complaint.  This suit is brought against the author of the action. However, since the content provider Automattic does not provide for the content provider's identity, the action is brought against the anonymous person under the fictitious name JOHN DOE. Since Automattic is the publisher of such content, this action is served against Automattic for publishing such defamatory content on their platform.

12. According to Defendant Automattic's own posted Community Standards, "Dangerous Individuals and Organizations" are defined as "organizations or individuals involved in the following: Terrorist activity, Organized hate, Mass or serial murder, Human trafficking, [or] Organized violence or criminal activity.

13. Such a statement as "AMERICA 2030 and his company are only concerned with manipulating people and stealing their hard-earned money" should be flagged by Automattic content moderators or the Automattic platform itself.

## FIRST CAUSE OF ACTION
*Lanham Act*

14. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

15. The Plaintiff's trademarks and names for "America 2030 Capital Limited" are protected by the Lanham Act and any content provider that keeps such information on their website is in violation of the act.

16. As described above, Defendants have used Plaintiff's name and persona by advertising and representing that the information on Automattic's page were true, when in fact, they were not.

17. In addition, Automattic has, with knowledge, induced, caused or materially contributed to the infringing conduct, by unreasonably delaying in removing the contents provided in Exhibit A despite notification of its existence and the harm that was occurring, and Automattic was put on notice by way of written letter.

18. Defendants' actions as described herein are in direct violation of Section 43(a) of the Lanham Act (15 U.S.C. §1125).

19. As a direct and proximate result of Defendants' actions as stated herein, Plaintiff has suffered significant damage to reputation. Further, Plaintiff is entitled to enhanced damages as a result of Defendants' malicious actions described above.

20. The acts of Defendants are believed to be willful and accordingly, Plaintiff is entitled to receive treble damages as a result of Defendants' actions. Similarly, this is an exceptional case, warranting an award of attorneys' fees to Plaintiff in an amount to be proven at trial.

21. As a direct and proximate result of said wrongful conduct by Defendants, Plaintiff has suffered damages in an amount to be proven at trial.

22. Unless Defendants are preliminarily and permanently enjoined from deleting the information from the Fake account on Automattic, Plaintiff will be irreparably harmed in a manner in which he cannot be adequately compensated in money damages. Plaintiff accordingly also seeks injunctive relief against Defendants.

23. The images that the Plaintiff seeks to have removed from the Defendants' websites by way of this lawsuit were kept on the Plaintiff's website. Accordingly, Plaintiff owns the copyright in such images. Indeed, it is evident on the face of the images that the photographs were taken by the Plaintiff herself.

24. While section 43(a)(1)(A) of the Lanham Act protects against customer confusion regarding the source of artists' works, section 43(a)(1)(B) protects against third parties misrepresenting artists' works through commercial activity

25. The elements of a false endorsement claim under the Lanham Act are that the defendant, (1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services. Lanham Trade-Mark Act, § 43(a)(1), 15 U.S.C.A. § 1125(a)(1). Roberts v. Bliss, 229 F. Supp. 3d 240 (S.D.N.Y. 2017)

26. Elements of a false endorsement claim under the Lanham Act are that (1) the defendants have a protectable trademark, and (2) a likelihood of confusion will exist as to the origin of the plaintiff's products. Lanham Act, § 43(a), 15 U.S.C.A. § 1125(a). All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc., 940 F. Supp. 2d 850 (C.D. Ill. 2013)

27. To prevail on a claim for trademark infringement and unfair competition under the Lanham Act, a plaintiff must establish the following three elements: 1) that the mark is valid and legally protectable; 2) that the plaintiff owns the mark; and 3) that the defendant's use of the mark is likely to cause confusion. Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 711 (3d Cir. 2004). Steer Mach. Tool & Die Corp. v. SS Niles Bottle Stoppers, LLC, 331 F. Supp. 3d 429, 432 (M.D. Pa. 2018).

28. To succeed on a trademark infringement or an unfair competition claim under the Lanham Act, a plaintiff must prove that: (1) the plaintiff's mark is entitled to protection, and (2) defendant's use of the allegedly infringing mark would likely cause confusion with the plaintiff's mark. Lanham Trade-Mark Act, § 1 et seq., 15 U.S.C.A. § 1051 et seq. CSL Silicones, Inc. v. Midsun Grp. Inc., 301 F. Supp. 3d 328 (D. Conn. 2018)

29. Here, the Defendants are in direct violation of the Lanham Act by allowing the contents from Exhibit A of this filing remain on their website, which is in direct violation of both Plaintiff's trademark rights and the community guidelines of the company themselves.

## SECOND CAUSE OF ACTION
### *Defamation*

30. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

31. Defamatory material about a Colorado entity placed on the Web and accessible in Florida constitutes an "electronic communication into Colorado" when the material is accessed (or "published") in Colorado. In the context of the World Wide Web, given its pervasiveness, an alleged tortfeasor who posts allegedly defamatory material on a website has intentionally made the material almost instantly available everywhere the material is accessible. By posting allegedly defamatory material on the Web about a Colorado entity, the poster has directed the communication about a Florida resident to readers worldwide, including potential readers within Colorado. When the posting is then accessed by a third party in Colorado, the material has been

"published" in Colorado and the poster has communicated the material "into" Colorado, thereby committing the tortious act of defamation within Florida. This interpretation is consistent with the approach taken regarding other forms of communication. Internet Sols. Corp. v. Marshall, 39 So. 3d 1201, 1214–15 (Fla. 2010).

32. To create liability for common-law defamation, claimant must establish the following: (1) a false and defamatory statement, (2) unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Restatement (Second) of Torts § 558. In re Food Mgmt. Grp., LLC, 359 B.R. 543 (Bankr. S.D.N.Y. 2007).

33. The five elements of defamation under Louisiana law are: (1) defamatory words; (2) publication to a person other than the one defamed; (3) falsity; (4) malice; and (5) resulting injury. Hoffman v. Bailey, 257 F. Supp. 3d 801 (E.D. La. 2017).

34. To create liability for common-law defamation, claimant must establish the following: (1) a false and defamatory statement, (2) unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Restatement (Second) of Torts § 558. In re Food Mgmt. Grp., LLC, 359 B.R. 543 (Bankr. S.D.N.Y. 2007).

35. If a court determines that the words at issue in a defamation claim under Louisiana law are not objectively capable of having a defamatory meaning, then a plaintiff's claim is not actionable and may be dismissed on a defendant's summary judgment. Hoffman v. Bailey, 257 F. Supp. 3d 801 (E.D. La. 2017)

36. Elements of defamation claim include (1) false and defamatory statement concerning another, (2) unprivileged publication to a third party, (3) fault amounting at least to negligence on part of publisher, and (4) either actionability of statement irrespective of special harm or existence of special harm caused by publication. Restatement (Second) of Torts § 558. Thomas v. Jacksonville Television, Inc., 699 So. 2d 800 (Fla. Dist. Ct. App. 1997).

37. The elements of a claim for defamation are as follows: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp,* 997 So.2d 1098, 1106 (Fla.2008). Internet Sols. Corp. v. Marshall, 39 So. 3d 1201, 1214 (Fla. 2010)

38. Defendant Automattic published the malicious, false and defamatory statements that Plaintiff had promoted or engaged in violence and hate.

39. Defendant Automattic published the malicious, false and defamatory statements that Plaintiff was a dangerous individual.

40. This false and misleading statements were published with malice, as Defendant Automattic knew that they were false and misleading, or at a minimum acted and published with a reckless disregard for the truth.

41. Plaintiff has been severely harmed and damaged by these and other false and misleading statements by Defendant Automattic, because they subjected him to hatred, distrust, ridicule, contempt, and disgrace, and the threat of severe bodily injury or death by those who are now led to believe that he is dangerous.

42. Plaintiff has been severely damaged by these false and misleading statements because they damaged Plaintiff's reputation and good will and severely harmed financially in her profession and business as a conservative investigative journalist, as well as personally.

43. Everyone has a duty, especially when on notice. The fact that content providers have their own policies in place to montr content is because they already have recognized duty to be prudent and not to allow harmful content from being distirbuted. When content providers have recognized this, they acknowledge certain liability and certain duty. They arenot monitoring content because hy are Good Smartan., tey are doing so because they relaize that they have a duty to procet sociey and their readers from harm. For exmaple, when a food manufactor or a restruant opens for business, nowhere I sit written that their foods must not poison people.

44. Further, courts have rules that various actions are not protected by free speech. When author is unknown and hides behind a fake provide, content provies have an obligation to monitor and edit the content to asses if it is in vioaltion of their own policies or can cause harm to others.

### THIRD CAUSE OF ACTION
*Defamation Per Se*

45. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

46. If even one of the required elements of the defamation tort under Louisiana law is lacking, the cause of action fails Hoffman v. Bailey, 257 F. Supp. 3d 801 (E.D. La. 2017)

47. Even if a plaintiff makes a prima facie showing of the essential elements of a defamation claim under Louisiana law, a defendant may prevail by showing either that: (1) the statement was true, as truth is an absolute defense to defamation claims under Louisiana law; or (2) that the statements were protected by an absolute or qualified privilege. Hoffman v. Bailey, 257 F. Supp. 3d 801 (E.D. La. 2017)

48. Elements of defamation claim include (1) false and defamatory statement concerning another, (2) unprivileged publication to a third party, (3) fault amounting at least to negligence on part of publisher, and (4) either actionability of statement irrespective of special harm or existence of special harm caused by publication. Restatement (Second) of Torts § 558. Thomas v. Jacksonville Television, Inc., 699 So. 2d 800 (Fla. Dist. Ct. App. 1997).

49. If a court determines that the words at issue in a defamation claim under Louisiana law are not objectively capable of having a defamatory meaning, then a plaintiff's claim is not actionable and may be dismissed on a defendant's summary judgment. Hoffman v. Bailey, 257 F. Supp. 3d 801 (E.D. La. 2017).

50. Defendant Automattic, as alleged herein, published numerous false, misleading and defamatory statements to severely harm and damage Plaintiff, which were republished widely elsewhere. Specifically, Defendant Automattic published in this district, nationally and internationally the falsity that Plaintiff is a "dangerous" individual that has engaged in discrimination.

51. Under Law, "it is established…that an oral communication is actionable per se - that is, without a showing of special damage - if it imputes to another (a) criminal offense amounting to a felony, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics or a condition incompatible with the proper exercise *of his lawful business*, trade, profession or office, or (d) the other being a woman, acts of unchastity." *Wolfson v. Kirk*, 273 So. 2d 774, 777 (Fla. Dist. Ct. App. 1973)

52. These false, misleading and defamatory statements were published in this district, domestically and internationally on the internet and elsewhere for the entire world to see and hear.

53. Specifically, Defendant Automattic published false and misleading facts, *inter alia*, that Plaintiff's conduct, characteristics or a condition is incompatible with the proper exercise of her lawful business, trade, profession or office as a journalist, as well as personally.

54. These false and misleading statements were published with malice, as Defendant Automattic knew that they were false and misleading, and/or at a minimum acted and published with a reckless disregard for the truth.

55. These false, misleading, and defamatory statements are defamatory *per se* because these false and misleading statements severely harmed and damaged Plaintiff in the Company's profession and business as an investigative journalist, as they concern conduct and characteristics incompatible with being an investigative journalist, and personally. Damage is presumed by law when defamation *per se* is shown as alleged herein.

56. A stock loan creditor's reputation is paramount. Falsely labeling Plaintiff as "dangerous" and falsely accusing the Company of having engaged in hate and/or violence damages the Company's good will and reputation, making it impossible for her to successfully continue her profession and also harms the Company personally as alleged herein.

**FOURTH CAUSE OF ACTION**
*Defamation By Implication*

57. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

38. Federal recognizes a cause of action for defamation by implication. Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098 (Fla. 2008).

58. Defamation has the following five elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory. Restatement (Second) of Torts §§ 558B, 580A–580B. Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098 (Fla. 2008).

59. In defamation cases, the interest sought to be protected is the objective one of reputation, either economic, political, or personal, in the outside world. Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098 (Fla. 2008).

60. Doctrine of compelled self-defamation, pursuant to which publication element for defamation would be eliminated, was not recognized in state, and thus employee, who alleged that he was compelled by law to disclose to prospective employers her former employer's false reasons for her termination, which had been communicated by former employer to her alone, failed to satisfy publication element to state defamation claim against former employer. Valencia v. Citibank Int'l, 728 So. 2d 330 (Fla. Dist. Ct. App. 1999)

61. Defamation is not a question of the existence of some individual or individuals with views sufficiently peculiar to regard as derogatory what the vast majority of persons regard as innocent. Restatement (Second) of Torts § 559 cmt. e. Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098 (Fla. 2008).

62. Doctrine of compelled self-defamation, pursuant to which publication element for defamation would be eliminated, was not recognized in state, and thus employee, who alleged that she was compelled by law to disclose to prospective employers her former employer's false reasons for her termination, which had been communicated by former employer to her alone, failed to satisfy publication element to state defamation claim against former employer. Valencia v. Citibank Int'l, 728 So. 2d 330 (Fla. Dist. Ct. App. 1999)

63. Defendant Automattic published numerous false, misleading and defamatory statements about Plaintiff, as set forth in the preceding paragraphs.

64. These false, misleading and defamatory statements were published on the internet and published and republished elsewhere in this district, nationally and internationally for the entire world to see and hear.

65. These false and misleading statements were published with malice, as Defendant Automattic knew that they were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

66. These statements created the false and misleading implication that Plaintiff has engaged in hate and/or violence as is a "dangerous" individual.

67. Plaintiff has been severely harmed and damaged by these false and misleading statements because they subject him to hatred, distrust, ridicule, contempt, and disgrace, as well as put him life in danger by those who would seek to retaliate against him.

68. Plaintiff has been damaged by these false and misleading statements because the statements severely harmed Plaintiff in him profession and business as an investigative journalist, as well as personally, as pled herein.

69. Plaintiff has requested pursuant to Colorado law that these defamatory statements be retracted, an apology made and that he be reinstated on Automattic. Defendant Automattic has arrogantly and unlawfully ignored this request and the defamation as pled herein is on-going and compounded each and every day.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant Automattic as follows:

Awarding Plaintiff compensatory including actual, consequential, and incidental damages for malicious defamatory conduct as alleged herein in an amount to be determined at trial and in excess of $40,000,000 U.S. Dollars.

Awarding punitive damages for Defendant Automattic's malicious defamatory conduct based on the routine and accepted calculation of 5 percent of Automattic's current net worth of about $63 billion U.S. dollars. Thus, punitive damages are requested be awarded by the jury in an amount to exceed $ 3 Billion U.S. dollars, which amount of punitive damages are designed to sufficiently punish Defendant Automattic in order that its illegal conduct not reoccur.

Awarding Plaintiff attorney's fees and costs.

Granting any such further relief as the Court deems appropriate including preliminary and permanent injunctive relief.

**JURY TRIAL DEMANDED**

Dated: August 20, 2019

*/s/ Jaitegh Singh*
Jaitegh Singh, Esq. #48585
Attorney for Plaintiffs
7424 S University Blvd
Ste E PMB 85099
Centennial, CO 80122
212-687-2578
jt@jtsinghlaw.com

**EXHIBIT A:**

# Val Sklarov

## The Face Behind Horrible Scams.

# Busting Val Sklarov

JUNE 28, 2019 | VALSKLAROV | LEAVE A COMMENT

As money frauds in businesses continue to increase, it's essential to expose the real faces behind these horrendous crimes. Val Sklarov (http://• https://medium.com/@valsklarov/val-sklarov-scammer-to-be-aware-of-73928c8dd542) is one of these fraudulent swindlers who scam innocent people. He's an unrepentant cheater who finds no shame in looting money from people who have burnt their blood to earn it. Val Sklarov deceives his clients and their organization without any fear of accountability. But we're exposing him for you all so that you don't fall into the traps of such crooks who are waiting to take full advantage of you and your money.

**Val Sklarov: The mugger who hides behind his fake organization.**

Val Sklarov (https://twitter.com/theValSklarov) is a professional con-man and hustler. He claims to have studied Criminal Justice and Business & Marketing from the University of Illinois, Chicago. But with how he has been conducting his hoax actives, it seems as if he is not aware of the criminal law. In fact, Val Sklarov knows nothing about doing business honourably. He and his organization, America 2030, are a mockery of professionalism. His company follows a code of ethics only on paper because its activities are nothing close to being ethical. Val Sklarov (https://www.pinterest.com/valsklarov/) and his company are only concerned with manipulating people and stealing their hard-earned money. And Val Sklarov is an expert at misleading people to make them trust him with their businesses. When this happens, he robs his clients' money and puts their businesses at risk. His company is more like a Burglar's Organization, which is a hoax to hide more crooks like him.

**Our first-hand experience with Val Sklarov.**

We have had an awakening and pathetic experience with Val Sklarov. Hence, we won't recommend anyone else to do business with him. When we first interacted with him and his company, we didn't know what awaited us. But as time passed, we became aware of his fraudulent nature and his hoax intentions. We partner with Val Sklarov (https://www.instagram.com/thevalsklarov/) to develop good working relations with his company, but we had no idea about the scam these bastards would pull on

us. We signed an agreement with Val Sklarov, which stated that we would receive our payment after the completion of the work. Following this agreement, we asked Skarlov to pay us our dues after finishing the job. But we were only presented with excuses. Val Sklarov assured us that the payment had been delayed due to some serious matters in the company, but it would be made within two weeks. But it seemed like they didn't intend to pay us. We patiently waited for the day we would receive our rightful money. We even reminded Val Sklarov about his promise. But it was to no good. Soon, Van Skarlov (https://www.facebook.com/Val-Sklarov-438822633625526/) started circumventing our calls. We still didn't give up and kept on requesting the cheater to clear our dues. But we became sure that we were never going to get our money after Val Sklarov thundered over us on call. He even threaten us to cover his dirty doings and prevent us from asking for our fees again.

**Don't trust Val Sklarov and other scoundrels like him.**

Val Sklarov (https://thevalsklarov.tumblr.com/) is only concerned with stealing the money of his clients and making them suffer. He is a pathetic person who knows nothing about running a legitimate business. He is miserable when it comes to dealing with people professionally. He takes shelter under the name of his so-called "professional" organization to attract clients he can later exploit. People like Val Sklarov are pure bastards. They should not be trusted under any circumstances. They should be held accountable for their fraudulent activities so that they stop looting people and their money.



REPORT THIS AD

*Blog at WordPress.com.*